## Button v. Pinckley.

(Decided Dec. 12, 1933.)

(As Modified on Denial of Rehearing March 23, 1934.)

BRENTS DICKINSON, Jr., W. L. PORTER and PAUL GREER for appellant.

B. F. DENHAM, HEBRON LAWRENCE, J. C. CARTER and BAIRD & GARNETT for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Miss Jennie Pinckley has recovered judgment for $3,000 against James Button for personal injuries sustained when she was struck or came in collision with an automobile owned by the latter, and he is appealing.

It is alleged in the petition that appellee's injuries were caused by the negligent operation of appellant's automobile in which he was riding accompanied by his wife who was driving. In addition to a general denial of the allegations of the petition, the answer affirmatively alleged contributory negligence on part of appellee. The issues were completed by a traverse of the affirmative allegations of the answer.

Grounds urged for reversal call for a recital of the salient facts in evidence. Miss Pinckley who resides at Tompkinsville was teaching school in Barren county and boarding at the home of Mr. and Mrs. Sid Nuckols. After spending the week-end at her home, Miss Pinckley was, on the day of the accident, returning to the Nuckols home as a guest in the automobile of Mr. Berry. When the Berry automobile arrived at a point in the Tompkinsville-Glasgow road opposite the Nuckols home, he drove over to the right side of the road. Appellee alighted from that side, and, after conversing with Mr. and Mrs. Berry and their niece, started around the rear of the automobile and across the highway toward the gate leading to her boarding place. She testified that after passing around the automobile and making two or three steps she looked up and saw appellant's automobile coming from the same direction from which they had come; that at the time it was about 200 yards away and she thought she had time to cross the road ahead of it, but, before she was able to cross, the automobile struck her. The bone in her left leg near the hip was crushed, her wrist was broken, and she sustained other bruises and injuries. She remained in the hospital for 73 days, and then returned to her home, where she was confined to bed for about 3 months. Her expense for

hospitalization, nursing, and medical attention was approximately $1,200. The evidence shows that, prior to the accident, appellee enjoyed good health and her leg which was injured was normal, but since the accident that member is crooked and about 2 inches shorter than the other. She is about 47 years of age and has been teaching in public schools for about 20 years, and at the time of the injury was earning over $80 per month. Since the accident she has been unable to do anything except to assist in light household duties.

Mr. Berry testified that when appellee got out and walked around the automobile he started his automobile and did not witness the accident, but heard the impact and saw appellee as she was thrown toward his automobile; that appellant's automobile continued on about 200 feet from the point of the accident. The occupants of both cars immediately got out and went to appellee, and Mr. Berry testified that Mr. Button said to his wife, "I told you you was going to hit that woman."

Mr. and Mrs. Nuckols were between the house and barn some distance from the highway and witnessed the accident. Mr. Nuckols testified that appellant's automobile was traveling at the rate of about 50 to 60 miles an hour. He testified that it was about 300 feet from the gate to the foot of the hill where appellee said she saw appellant's automobile and heard the horn. Mrs. Nuckols did not attempt to give the speed of the automobile, but said that it was traveling very fast. Henry Pinckley, brother of appellee, testified that it was about 900 feet from the foot of the hill to the gate where the accident occurred. He did not actually measure the distance, but stated that he counted the fence posts which he thought were 14 feet apart. He stepped the width of the highway, and it was 45 feet from ditch to ditch, and the improved portion was 35 feet in width. He testified that he had a conversation with appellant about the accident and asked him if Mrs. Button put her foot on the brake, and appellant said, "if she had it would have been too bad." In this he was corroborated by others.

Mrs. Button testified that she was driving about 30 or 35 miles an hour at the time of the accident and did not see appellee until she was right on to her, indicating the distance by two points in the courtroom; that she sounded her horn once or twice when she was about as

far from appellee as from the witness chair to the curb of the courthouse yard, but that distance is not otherwise made to appear in the record; that she put on the brakes and pulled as far as she could to the side of the road, but that appellee was running across the road and came in contact with the side of the automobile. The evidence shows that the handle of the door was broken and the rear fender bent by the impact. When asked how far she ran after striking appellee, the witness again indicated by some object in the courtroom, and this, like her other answers as to distance, gives no definite idea. There was also evidence as to statements made by appellee to the effect that she ran into the side of the automobile, and that the driver was not to blame for the accident. Appellee denied that she made these statements and is corroborated to some extent by other witnesses. Mr. Button also denied making statements attributed to him by other witnesses.

The evidence for appellee clearly indicates that the highway from the foot of the hill where appellee testified she saw the automobile to the point of the accident is straight and the view unobstructed, although there is some evidence for appellant which in a measure would indicate otherwise.

It is first argued that the court erred in not sustaining appellant's motion for a peremptory instruction based on the theory that appellee saw the automobile approaching, misjudged its speed, and, in disregard for her own safety, attempted to beat it across; that the automobile did not strike her, but that she ran into the side of it.

Evidence for appellee as to the surrounding conditions, the speed of appellant's automobile, and other facts and circumstances attending the accident conduces to establish negligence on the part of the driver of the automobile. On the other hand, there is evidence to indicate that appellee's injuries resulted from her negligence and want of care for her own safety. On the whole, the evidence strongly tends to indicate that the driver of the automobile could have avoided injuring appellee by the exercise of ordinary care after she discovered, or by the use of ordinary care could have discovered, her peril. It is therefore apparent that an issue of fact was made for the jury.

It is further argued that instruction No. 1 given by

the court is erroneous and prejudicial. The instruction reads:

> "The Jury will find for the defendant unless you believe from the evidence that defendant's wife, who was driving the car, failed to exercise ordinary care to avoid injuring the plaintiff after she discovered, or by the exercise of ordinary care could have discovered plaintiff's peril, in which event you will find for the plaintiff."

This and instructions defining ordinary care, the measure of damage, and authorizing a verdict by nine or more, were the only instructions given.

First it is urged that the quoted instruction should not have been given because the proven facts and circumstances did not warrant the application of the last clear chance doctrine; and, second, that if such instruction had been warranted by the evidence, it is defective in that it authorized a finding for appellee without regard to whether her injuries were the proximate result of the failure of the driver of the automobile to exercise ordinary care to avoid injuring her after discovering her peril, if there was such failure.

Unquestionably, appellee was entitled to an instruction on the last clear chance theory, and, in fact, there is ample room for argument that the instruction on negligence and contributory negligence should have been given; however, all doubt as to the latter question was resolved in favor of appellant, and in the circumstances it is necessary for us to determine the matter.

In support of argument that the instruction given is erroneous in the particular pointed out, counsel cite the case of Herndon v. Waldon, 243 Ky. 312, 47 S. W. (2d) 1047, wherein it was held, in effect, that a last clear chance instruction not requiring defendant's negligence to be the proximate cause of the injury is erroneous.

In the earlier case of Cumberland Grocery Company v. Hewlett, 231 Ky. 702, 22 S. W. (2d) 97, which in many aspects is similar to the instant case, this court indicated that on another trial an instruction similar to the one complained of here should be given, and the trial judge evidently had that case before him in drafting the instruction in this case.

To be actionable, negligence must be the proximate

cause of the injury complained of, and ordinarily a last clear chance instruction should follow the form indicated in the case of Herndon v. Waldon, supra, and embody this theory; however, considering all the proven facts and circumstances in this case, the issue made by proof authorizing such an instruction was fairly submitted to the jury and appellant's substantial rights were not prejudiced thereby.

Judgment affirmed.

Whole court sitting, except Richardson, J.