Richard JOHNSON, Jr., acting by and through Charles G. Franklin, his guardian ad litem, Appellant,

v.

J. E. MORRIS' ADMINISTRATRIX,
Juanita Morris, Appellee.

Court of Appeals of Kentucky.

Oct. 7, 1955.

Charles G. Franklin, Carroll S. Franklin, Madisonville, for appellant.

Neville Moore, Carroll Morrow, Madisonville, for appellee.

MILLIKEN, Judge.

This is an appeal from a judgment of $7,500 for the negligent killing of James Edwin Morris by an automobile operated by the appellant, Richard Johnson, Jr. The determinative issue is whether the trial

court acted properly in giving a last clear chance instruction.

On the night of Saturday, August 3, 1953, appellee's intestate, James Edwin Morris, in company with his wife who is the appellee, his small child and some intimate friends, were on a side road leading east from Highway No. 62 about one-half mile north of the city limits of Dawson Springs in Hopkins County, Kentucky. This side road has a gravel surface and is about 18 feet wide. There are no intersections, lights, or signs on this road apart from its intersection with Highway No. 62. It is sufficiently straight to afford a view of 200 or 300 feet ahead. The decedent, James Edwin Morris, became intoxicated and abusive. His wife and friends left him walking on this road at about 9:30 p. m. When he was last seen, he was "staggering and cursing on his righthand side of the road," walking towards Highway No. 62 which is about 300 feet distant.

At about 9:30 or 9:45 p. m. the appellant, defendant below, in company with three other teenage boys turned off of Highway No. 62 and proceeded down this side road, traveling at a speed of 25 to 35 miles per hour. He saw an object in the road about the middle of the right driving lane when he was a short distance from it, but said he was too close to stop or change his course, and maneuvered his car so that the wheels straddled the object. He turned around and came back and discovered it was a man lying lengthwise in the road. The appellant and his friends became frightened and left the scene without notifying anyone of what they had seen. The body of the decedent was discovered by appellee's brother, James Nichols, who had been sent to look for Morris about twenty minutes after Mrs. Morris, the appellee, and her friends had left him. The gas tank on appellant's car apparently struck Morris as it straddled him, although the boys felt no impact. He died the next day.

The principal question presented on this appeal is whether the court erroneously gave a "last clear chance" instruction which authorized a recovery if the operator of the automobile discovered, or in the exercise of ordinary care could have discovered, the decedent's peril in time to avoid the accident even though the deceased was contributorily negligent. We are not presently concerned with the form of the instruction but whether it should have been given at all under the facts of this case.

The "last clear chance" doctrine was humanely evolved by the courts in order to mitigate the harshness of the plea of contributory negligence as an absolute bar to recovery. In a sense, it compares the negligence of the parties. Since it is a doctrine of *discovered* peril, originally it was invoked only when the peril was *actually* discovered and the discoverer failed to take steps thereafter to avoid the injury. The requirement of actual discovery is adhered to by this court in cases involving injuries to *trespassers* on railroad tracks. See Frankfort & C. R. Co. v. Holder's Adm'r, 307 Ky. 11, 209 S.W.2d 722.

In automobile cases the principle has been extended to allow recovery by a contributorily negligent plaintiff if his peril not only was discovered but should have been discovered by the defendant in the exercise of reasonable care. In these "unconscious last clear chance" cases the time of day—whether it was daylight or dark when the accident happened—and the length of time the defendant had in which to avoid injuring the negligent plaintiff are factors which must be considered in determining whether a last clear chance instruction should be given. We have consistently held that the defendant must, as a matter of fact, really have the *last clear chance*. In each case facts must be proved which justify the conclusion that the plaintiff's peril *should* have been discovered by the defendant. The peril must be reasonably obvious. See Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, 759, for a résumé of "unconscious last clear chance" cases. In each case there reviewed, a " 'last clear chance' " instruction was authorized be-

cause the plaintiff's peril was obvious for a sufficient period of time.

In the Swift & Co. v. Thompson case, the plaintiff's decedent was struck by defendant's automobile while walking at night on the paved portion of the highway in the wrong lane so that his back was to the traffic approaching in that lane. The defendant testified his vision was somewhat obscured by two oncoming vehicles; that he struck the decedent just as he passed the second oncoming car. This court held that a last clear chance instruction should not have been given, saying:

"In the present case it is not shown that the decedent was in plain view or that his peril, under the traffic conditions existing, was obvious. The cases discussed * * * involved daylight conditions when visibility is markedly different from those after dark. * * *"

This court refused to order a directed verdict for the defendant on the ground that the proximate cause of the accident was a matter for the jury to decide.

In Saddler v. Parham, Ky., 249 S.W.2d 945, 949, the plaintiff pedestrian was injured, as was the plaintiff's decedent in the Thompson case, while walking at night on the right side of the highway, in direct violation of KRS 189.570(6). The defendant testified that a vehicle passed him going in the opposite direction, and he was temporarily blinded by its lights; that he did not see the plaintiff and his brothers until he was within 15 or 20 feet of them, and that he immediately applied his brakes and attempted to swerve to the left to avoid them. A directed verdict for the defendant was affirmed by this court. The court said:

"We are aware that in the Swift case, Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, where the facts were quite similar, it was held that the question of proximate cause should be submitted to the jury. Perhaps the Swift case can be distinguished on a slight difference in facts, but we are inclined to the opinion that the Swift case was wrong on this point."

More important for purposes of the case at bar, the court said:

"Under the concept of the last clear chance doctrine expressed in the Swift case and the Lawson case, Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843, we must hold as a matter of law that the defendant in the case before us did not have a last clear chance. There is no evidence showing that the defendant *actually* discovered the plaintiff's peril in time to avoid him. The only basis upon which the doctrine could be applied here is that the defendant *should* have discovered the plaintiff's peril in time to avoid him. However, it is held by the great weight of authority that it is only where the plaintiff is *physically unable* to escape from his peril that the defendant is held responsible on the ground that he *should have* discovered the peril. 38 Am.Jur., 'Negligence,' § 224, p. 909; Prosser on Torts, ch. 9, § 54, p. 408."

As said before, the plaintiff's peril must be reasonably obvious so that the defendant does, as a matter of fact, have the last clear chance. It is not a speculative chance or a possible chance. In each case there must be facts proved which justify the conclusion that the plaintiff's peril should have been discovered. The appellant and those riding in the car with him testified that the car lights did not reveal the prone object in the gravel road until they were within 15 or 20 feet of it, when it was too late to do anything but maneuver in order to straddle it. None of them recognized the object to be a man. There was no evidence their car lights were defective, but even if we assume that they were, it does not affect the last clear chance for that arises only after the peril was discovered. They turned around and came back to the object and saw that their car had straddled a man lying lengthwise in the road. The man was lying with his feet pointing in the direction

from which the appellant's car had approached. He was wearing blue pants and a blue shirt.

The testimony of several witnesses for the appellee was to the effect that there was a clear view along the road for 200 or 300 feet ahead, leaving the inference that appellant could have seen the prostrate form in the road had he been keeping a sufficient lookout ahead at the time. If the accident at bar had happened in the daytime, the appellee's contention would be more persuasive. Morlan v. Hyatt, 116 Kan. 86, 225 P. 739. As it is, it seems to us that the darkness, the prone position of the body on the gravel highway, and the dark color of Morris' clothes did not constitute a situation where the peril was reasonably obvious and the chance of avoiding it clear.

In view of our consistent recognition that the defendant must, as a matter of fact, really have a last clear chance before a last clear chance instruction is authorized, we must as a matter of law hold in the present case that the appellant did not have a last clear chance.

The judgment is reversed for proceedings consistent with this opinion.